1

HONORABLE RONALD B. LEIGHTON

2

3

4

5

6

UNITED STATES DISTRICT COURT
7
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

STEVEN CURTIS DUCKWORTH,                 CASE NO. C14-1359RBL
9
                         Plaintiff,
                                         ORDER GRANTING
10                                       DEFENDANTS' MOTION FOR
          v.                             SUMMARY JUDGENT
11
PIERCE COUNTY, et al,
12
                         Defendant.
13

14          THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment

15   [Dkt. #54].  The Court has considered the pleadings filed in support of and in opposition to the

16   motion and the remainder of the file, and hereby GRANTS the motion for the reasons stated

17   herein.

18                              **I. FACTUAL BACKGROUND**

19          The Plaintiff's Complaint alleges excessive force, wrongful arrest and police misconduct

20   [Dkt. #1-2].  On June 17, 2012, Plaintiff and his wife heard what they describe as screaming coming

21   from a vacant, former industrial wooded area near their home.  Plaintiff states in his complaint that

22   the screaming led him to believe that a person was being victimized in a violent crime.  Plaintiff's

23   wife then placed a call to 911 to inform law enforcement about the situation.

24

1    The call was placed at approximately 11:30 pm, and Pierce County Sheriff's Deputies

2    responded to the report of a possible assault.  Mrs. Duckworth made a second call to 911, three

3    minutes later, at 11:33 pm.  Plaintiff states that he had to use the restroom because he was upset,

4    during which time his wife and daughter left to meet the police.  Citing his concern that law

5    enforcement was taking too long to respond and the fact that his wife and daughter had left the home

6    while he was in the restroom, took his baseball bat and went outside to investigate for himself.

7    Plaintiff drove to the scene of the ongoing investigation. Despite his stated reason for

8    responding—because the police were taking too long to respond—Plaintiff states that before entering

9    the crime scene, he approached two unidentified deputies that were already there to say, "you're in

10   the wrong spot. I'll show you where it is."  Plaintiff states that he then continued in his vehicle and

11   parked about 50 feet further down the road.  Plaintiff makes no statement regarding where these

12   deputies went when he decided to enter the scene of the investigation himself, but he states that he

13   did not look to see if they were following him, and he received no indication that they would.

14   Deputy Lopez explains that he was one of the deputies that Plaintiff approached prior to entering the

15   scene of the investigation.  Although Plaintiff states that he did not hear any instruction from the

16   deputies he approached, Deputy Lopez further explains that he had instructed Plaintiff to go home

17   and to leave the scene of the investigation.

18   After parking, Plaintiff exited his vehicle and entered the vacant lot where the investigation

19   was taking place.  Despite his stated belief that officers were following him, Plaintiff still grabbed his

20   bat and brought it with him.

21   Shortly after entering the vacant lot, Plaintiff was approached by Deputy Carpenter, who was

22   carrying a flashlight and pointing it directly at Plaintiff.  Plaintiff admits that he knew Deputy

23   Carpenter was a police officer the moment he saw the flashlight.  Deputy Carpenter then yelled at

24   Plaintiff to "drop the bat and get to the ground."

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGENT - 2

It is undisputed that Mr. Duckworth, armed with a bat, entered an area where the police were investigating a violent crime, at night. It is also undisputed that while on the scene Mr. Duckworth refused to obey at least three commands to drop his baseball bat and three more subsequent commands to lie on the ground.

The deputies on the scene knew that they were investigating a violent crime. At the exact same time the deputies encountered Mr. Duckworth in the vacant lot, refusing to obey commands, screams of a potential assault victim could be heard nearby. The officers were compelled to debate with Mr. Duckworth while valuable seconds were taken away from assisting another citizen who was screaming for help.

After Plaintiff finally stopped and dropped the bat, Deputy Carpenter continued instructing him to get on the ground. However, Plaintiff refused to lie down as ordered, complaining that there was broken glass on the ground. In his complaint, Plaintiff alleges that he began lowering himself to his right knee whereupon "Deputy Carpenter immediately attacked [him]." However, at deposition, Plaintiff admits that he had initially refused to lower himself due to glass on the ground and that after he initially began to lower himself to his right knee, he stopped and refused to lie down due to broken glass on the ground. He was pushed to the ground from behind and handcuffed.

The police report of the incident offers even more detail of the incident, revealing that Plaintiff physically resisted Deputy Carpenter's attempt to arrest him by "pulling away" when Deputy Carpenter grabbed his arm, "slipping from [Deputy Carpenter's] grasp" during an attempted "head-control takedown," and "resist[ing] putting his hands behind his back." Deputy Carpenter had to receive assistance in subduing Plaintiff from fellow Pierce County Sheriff's Deputies Greiman and Lopez.

On June 20, 2012, Plaintiff was charged with one count of unlawfully carrying weapons apparently capable of producing bodily harm under RCW 9.41.270(1)(2), and one count of Resisting

Arrest under RCW 9A.76.040(1).  Plaintiff was represented by counsel and found eligible for court-appointed representation through the Office of Assigned Counsel.  On March 11, 2013, the criminal complaint was amended to add a count of obstructing a police officer in violation of RCW 9A.76.020(1).  On June 19, 2013, the criminal charges were voluntarily dismissed by the State, citing Deputy Carpenter's unavailability for trial due to injury.  The court granted the State's motion and dismissed the charges without prejudice.  Plaintiff's motion to dismiss with prejudice was denied.

On July 29, 2014, the State re-filed the charges of unlawfully carrying weapons apparently capable of producing bodily harm under RCW 9.41.270(1)(2), and resisting arrest under RCW 9A.76.040(1).  Plaintiff's criminal proceedings in relation to this incident are ongoing, as he entered into a two-year pretrial diversion agreement on November 10, 2014.  The court accepted the agreement and entered an order continuing the case without finding until November 10, 2016.  In accordance with the terms of court's order and the pretrial diversion agreement, Plaintiff paid a fine/costs of $450 on October 9, 2015.  To date, Plaintiff is in compliance with the pretrial diversion agreement, and the matter remains scheduled for dismissal on November 10, 2016.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v.* Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (nonmoving party must

present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 relying on *Anderson*, 477 U.S. at 255).  Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

### III. ARGUMENT

The defendants move for summary judgment of the false arrest claim because of judicial estoppel.  They move on the excessive force claim on the basis of qualified immunity.  Finally, they seek dismissal of the *Monell* claim on the absence of any specific policy in support of plaintiff's municipal claim under 42 U.S.C. § 1983.

**A.  Judicial Estoppel.**

"[F]ederal law governs the application of judicial estoppel in federal court."  *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 603 (9th Cir. 1996).  Three non-exhaustive factors that a trial court should generally consider when determining whether to apply the doctrine of judicial estoppel are:

> First, a party's later position must be clearly inconsistent with its earlier position.  Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled.  Third, courts ask whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not stopped.

*New Hampshire v. Maine*, 532 U.S. 742, 743, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

As a result of this event, Mr. Duckworth was charged in Pierce County District Court with Displaying a weapon and Obstructing Law Enforcement.  While represented by counsel he agreed as part of a Diversion Agreement that he stipulated to the police report, the facts contained in the written police reports, and all discovery provided to defense.  The defendant further stipulated that the facts contained in this respect were sufficient to support a finding of guilty on the original crimes charged.  In the face of that agreement, the Court concludes that judicial estoppel applies to bar Duckworth from arguing in the instant action that he was falsely arrested.  This claim is **DISMISSED**.

**B.  Qualified Immunity.**

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of the doctrine is to

"protect officers from the sometimes 'hazy border' between excessive and acceptable force."

*Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 206

(2001)). A two-part test resolves claims of qualified immunity by determining whether plaintiffs

have alleged facts that "make out a violation of a constitutional right," and if so, whether the

"right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*

*v. Callahan*, 553 U.S. 223, 232 (2009).

       Qualified immunity protects officials "who act in ways they reasonably believe to be

lawful." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011) (quoting *Anderson*,

483 U.S. at 631). The reasonableness inquiry is objective, evaluating 'whether the officers'

actions are 'objectively reasonable' in light of the facts and circumstances confronting them,

without regard to their underlying intent or motivation.'" *Huff v. City of Burbank*, 632 F.3d 539,

549 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Even if the officer's

decision is constitutionally deficient, qualified immunity shields her from suit if her

misapprehension about the law applicable to the circumstances was reasonable. *See Brosseau v.*

*Haugen*, 543 U.S. 194, 198 (2004). Qualified immunity "gives ample room for mistaken

judgments" and protects "all but the plainly incompetent." *Hunter v. Bryant*, 502 U.S. 224

(1991).

       The police had probable cause to arrest the plaintiff.  The police acted reasonably in light

of the objective evidence that the plaintiff presented a threat to the officers and was clearly

obstructing their lawful duties to investigate a potentially serious crime.  The police officers

1    acted reasonably under all the circumstances. No reasonable juror could find otherwise. The

2    claim for excessive force is **DISMISSED**.

3    **C. Municipal Liability.**

4        To set forth a claim against a municipality under § 1983, a plaintiff must show that the

5    defendant's employees or agents acted pursuant to an official custom, pattern, or policy that

6    violates the plaintiff's civil rights, or that the entity ratified the unlawful conduct. *See Monell v.*

7    *Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91, 98 S. Ct. 2018 (1978); *see also*

8    *Larez v. City of Los Angeles*, 946 F.2d 630, 646–47 (9th Cir. 1991). A municipality may be liable

9    for a "policy of inaction" where "such inaction amounts to a failure to protect constitutional

10    rights." *Lee v. City of Los Angeles*, 250 F.3d 668, 682 (9th Cir. 2000) (quoting *City of Canton v.*

11    *Harris*, 489 U.S. 378, 388 (1989)). Municipal liability for inaction attaches only where the policy

12    amounts to "deliberate indifference." *Id.* The custom or policy of inaction, however, "must be the

13    result of a conscious or deliberate choice to follow a course of action made from among various

14    alternatives by the official or officials responsible for establishing final policy with respect to the

15    subject matter in question." *Id.* (citations and internal punctuation omitted). Thus, to impose

16    liability on a local government entity for failing to act to preserve constitutional rights, a § 1983

17    plaintiff must allege that: (1) a municipality or its employee deprived plaintiff of a constitutional

18    right; (2) the municipality has customs or policies that amount to deliberate indifference; and (3)

19    those customs or policies were the "moving force" behind the constitutional right violation. *Id.* at

20    681–82.

21        A municipality is not liable simply because it employs a tortfeasor. *See Monell*, 436 U.S.

22    at 691. A municipality may not be held liable for the torts of its employees unless they were

23    acting pursuant to an official policy or longstanding custom or practice. *See Botello v. Gammich*,

24    413 F.3d 971, 978–79 (9th Cir. 2005) (citing *Monell*, 436 U.S. at 691; *Bd. of Cty. Cmm'rs v.*

1  *Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382 (1997); *Pembaur v. City of Cincinnati*, 475 U.S. 469,

2  479, 106 S. Ct. 1292 (1986); and *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003)).

3         There is not a scintilla of evidence that these police officers were poorly trained or that

4  they responded to some policy or custom to terrorize or persecute citizens in any way.  The

5  police officers disarmed a person intruding into an active crime scene, got him on the ground,

6  and handcuffed him for reasons of officer safety.  This action was in compliance with standard

7  operating procedure.  The plaintiff cannot credibly identify any policy by Pierce County that was

8  the "moving force" behind any constitutional right violation.  The municipal liability claim is

9  **DISMISSED**.

10                                  **IV. CONCLUSION**

11         The Motion for Summary Judgment [Dkt. #54] is **GRANTED**.  The claims of plaintiff

12  are **DISMISSED WITH PREJUDICE**.

13         IT IS SO ORDERED.

14         Dated this 19th day of September, 2016.

15

16         _____
                 Ronald B. Leighton
17                 United States District Judge

18

19

20

21

22

23

24